IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL NIEDERBERGER,    *

    Plaintiff,    *

v.    *    CIVIL NO. JKB-23-2759

WEGMANS FOOD MARKETS, INC.,    *

    Defendant.    *

    *

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM**

Plaintiff Michael Niederberger brought suit against his employer, Wegmans Food Markets, Inc. ("Wegmans"). (*See* Compl., ECF No. 1.) Currently pending before the Court is Wegmans' Motion to Dismiss. (ECF No. 14.) For the following reasons, the Motion will be denied with respect to Counts 2 and 7, but will be granted with respect to all other counts.

**I.**    ***Factual Background***

Niederberger alleges that he is a devout Roman Catholic Christian. (Compl. ¶¶ 12–13.) He believes that "God created humans male and female as a unique expression of His image" and that "[t]hese beliefs derive from the Bible, specifically Genesis 1:26–27." (*Id.* ¶ 18.) Niederberger further alleges that he "believes that one's sex is ordained by God, that one should love and care for the body that God gave him or her, and that one should not attempt to erase or to alter his or her sex." (*Id.* ¶ 20.) He also "believes that he must not speak against these truths by using new, different, or assumed names and pronouns that contradict a person's biological sex." (*Id.* ¶ 21.) Further, he "sincerely believes that living a lie and being forced to repeat that lie out loud with his own lips is a significant violation of his right to practice his religion." (*Id.* ¶ 23.) He cites passages from the Bible for the proposition that he is not to lie. (*Id.* ¶ 24.)

Niederberger alleges that he worked at Wegmans as a Manager of the Dairy Department. (*Id.* ¶ 25.) As a Manager, he "had many important tasks including . . . making work schedule[s] for subordinate employees, writing orders for purchase of dairy products, overseeing inventory, assigned task and responsibilities to all employees in the department." (*Id.* ¶ 26.) He alleges that he "received outstanding performance reviews, promotions, raises, and earned the respect of his co-workers for his job performance." (*Id.* ¶ 27.)

He alleges that Wegmans "introduced pronouns on nametags and encouraged and/or required employees to refer to others by their preferred pronouns." (*Id.* ¶ 28.) Because he felt uncomfortable, rather than use the correct pronouns, Niederberger "made a concerted effort to refer to most co-workers by their actual name." (*Id.*) When he drafted performance reviews for the employees he managed, Niederberger would "try to write the review without using" the correct pronouns and rather would use the employee's name or "you." (*Id.* ¶ 29.)

SF, who uses he/him pronouns, is a Wegmans employee who worked under Niederberger's supervision. (*Id.* ¶ 30.) SF "sometimes struggled with communicating verbally, so [he][1] typed up an explanation of [his] thoughts on [his] cell phone to let Plaintiff read." (*Id.* ¶ 31.) Niederberger "thanked [him] for sharing and told [him] he believed that [SF] was created the way [he] was meant to be and that [he] should not feel [he] had to change who [he] is to be accepted and should not feel ashamed to be [him]self, and that he wanted the best for [him]." (*Id.*) Niederberger alleges that he asked SF if he could continue calling him by the name he no longer used, KSF, and that SF agreed. (*Id.* ¶ 32.) Later in his Complaint, Niederberger alleges that SF "had given [his] consent for Plaintiff to use [his] actual name *and* female pronouns." (*Id.* ¶ 38 (emphasis added).)

---

[1] Although Niederberger refers to this employee as "KSF" and uses "she/her" pronouns throughout the Complaint, Wegmans' briefing makes clear that this employee goes by "SF" and uses "he/him" pronouns. The Court will use he/him pronouns and refer to the employee as SF.

2

In Niederberger's annual review of SF, he used she/her—rather than he/him—pronouns. (*Id.* ¶ 34.) Wegmans management rejected the review, directing Niederberger to use the correct pronouns. (*Id.*) Niederberger alleges that he "told Wegmans management that he was not comfortable using the 'corrected' words because of his religious beliefs. Wegmans did not allow Plaintiff to use KSF's actual name, and would not allow another person to complete KSF's review." (*Id.* ¶ 35.) He alleges that he had "several meetings with Wegmans management in which he expressed his conscientious religious objection to following its policy on preferred names and pronouns and asked for a religious accommodation which Wegmans denied." (*Id.* ¶ 36.) He alleges that the interactive process with Wegmans did not include SF. (*Id.* ¶ 40.)

Niederberger alleges that Wegmans "imposed adverse employment actions" including: "Pressure to Compromise Religious Beliefs"; "Prevention from Completion of Employment Duties"; "Compulsory and Involuntary Time Off from Established Work Schedule"; "Disqualification and Demotion from Managerial Position"; "Termination of Managerial Employment Position"; and "Offering Severance or Employment Positions with Reduced Pay and Benefits." (*Id.* ¶ 37.) Niederberger is still employed at Wegmans but not in a supervisory role. (*Id.* ¶¶ 39, 44.)

Niederberger brings nine claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and its Maryland state law analogue, the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't, §§ 20–601 *et seq.* (*Id.* ¶¶ 46–153.) He brings the following claims under Title VII: disparate treatment (Count 1); failure to accommodate (Count 2); retaliation (Count 3); "religious coercion, harassment" (Count 4); and hostile work environment (Count 5). (*Id.*) He brings the following claims under FEPA: disparate treatment (Count 6); failure to accommodate (Count 7); retaliation (Count 8); and failure to prevent discrimination and harassment (Count 9).

3

## II. Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. Analysis

For the reasons set forth below, Wegmans' Motion to Dismiss will be granted with respect to all claims other than Niederberger's failure to accommodate claims (Counts 2 and 7).

### A. Failure to Accommodate and Disparate Treatment (Counts 1, 2, 6, and 7)

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]" 42 U.S.C. § 2000e-2(a). The statute defines religion to "include[] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "[A]n employee alleging intentional discrimination under § 2000e–2(a)(1) can

4

bring suit based on a disparate-treatment theory or a failure-to-accommodate theory." *Abeles v. Metro. Washington Airports Auth.*, 676 F. App'x 170, 174 (4th Cir. 2017) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996)).[2]

Niederberger brings disparate treatment claims under Title VII and FEPA (Counts 1 and 6) and failure to accommodate claims under Title VII and FEPA (Counts 2 and 7). "FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII." *Finkle v. Howard Cnty.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014). Therefore, the Court's analysis of Niederberger's Title VII claims will constitute its analysis of his FEPA claims. The Court will deny the Motion with respect to the failure to accommodate claims, but will grant the Motion with respect to the disparate treatment claims.

1. **Failure to Accommodate (Counts 2 and 7)**

    a. **Legal Framework**

Under Title VII, employers have a duty to "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quotation and citation omitted). "[A]n employee must prove that: (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Id.* (citation and quotation omitted). The Fourth Circuit "employ[s] a burden shifting scheme akin to the one articulated in

---

[2] Niederberger accuses Wegmans of being "seriously misleading" in its statement that there are two theories of religious discrimination under Title VII: failure to accommodate and disparate treatment. (ECF No. 21.) He then cites *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) for the proposition that the "the two causes of action are disparate treatment and disparate impact." (*Id.*) First, Niederberger *himself* labelled his Title VII claims "disparate treatment" and "failure to accommodate" is his Complaint. Second, Niederberger does not allege a disparate impact claim. Third, as the Fourth Circuit has explained—post-*Abercrombie*—Title VII "provides two ways of proving discrimination in employment by showing: (1) 'disparate treatment' or (2) 'disparate impact.'" *Abeles*, 676 F. App'x at 174 (citing *Abercrombie*, 575 U.S. 768). The Fourth Circuit went on to explain that "an employee alleging intentional discrimination . . . can bring suit based on a disparate-treatment theory or a failure-to-accommodate theory." *Id.* Thus, in short, there is nothing "seriously misleading" about Wegmans' arguments.

5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Johnson v. Wheeling-Pittsburgh Steel Corp.*, 279 F. App'x 200, 207 (4th Cir. 2008). Once a plaintiff establishes a prima facie case of a failure to accommodate, "the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." *Id.* The employer "must demonstrate either (1) that it provided the plaintiff with a reasonable accommodation for his or her religious observances or (2) that such accommodation was not provided because it would have caused undue hardship." *Id.*

However, while the reasonableness or undue hardship of any accommodation will be a critical question at a later stage in the life of this case, in considering a Rule 12(b)(6) motion, "the burden-shifting analysis is not implicated" and "the Court need not evaluate the reasonableness of any accommodations or the burden an accommodation would put on the defendant." *Walton v. Greensville Corr. Ctr.*, Civ. No. 14-628-RCY, 2015 WL 2452451, at *10 (E.D. Va. May 21, 2015). In short, "[a] plaintiff can survive a motion to dismiss a Title VII claim if he simply presents allegations sufficient to reasonably infer a prima facie case of discrimination under the *McDonnell Douglas* framework." *Id.* (citation and quotations omitted).

Wegmans challenges Niederberger's failure to accommodate claims on two bases. First, that Niederberger fails to allege a bona fide religious belief that conflicts with Wegmans' Non-Harassment Policy. (ECF No. 14-1 at 11–16.) And second, that Niederberger's requested accommodation is unreasonable and would impose an under hardship on Wegmans. (*Id.* at 16–24.) Neither of these arguments is availing at this stage of the litigation, and the Court will deny the Motion.

### b. Bona Fide Religious Belief

Wegmans argues that Niederberger fails to allege a bona fide religious belief that conflicts with Wegmans' Non-Harassment Policy. (ECF No. 14-1 at 11–16.) The Court cannot dismiss

6

Niederberger's claims on this basis.³

"The determination of what is a 'religious' belief is more often than not a difficult and delicate task[.]" *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Frazee v. Illinois Emp. Sec. Dept.*, 489 U.S. 829, 833 (1989) (recognizing "the difficulty of distinguishing between religious and secular convictions"). Employees cannot invoke blanket exemptions entitling them to make "unilateral decisions" about the job requirements with which they will comply, "even where religion is expressly invoked in communicating the beliefs." *Foshee v. AstraZeneca Pharms. LP*, Civ. No. SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023). At the same time, it is well established that it is not proper "to question the correctness or even the plausibility of [a Title VII plaintiff's] religious understandings." *Consol Energy, Inc.*, 860 F.3d at 142. Indeed, "[i]t is not the Court's role to second-guess the logic or reasonableness of a claimant's sincerely held religious views. Nor is it the place of the Court to demand that a plaintiff justify her beliefs through a detailed theological account or scriptural exegesis." *Shigley v. Tydings & Rosenberg LLP*, Civ. No. JKB-23-02717, 2024 WL 1156613, at *5 (D. Md. Mar. 18, 2024).

The Court need not find Niederberger's religious beliefs comprehensible or logical to find that he has sufficiently stated that he has a religious belief that conflicts with an employment requirement. As this Court recently explained, "[t]he Complaint must at a minimum identify a plaintiff's religion or explain how a plaintiff's objections are informed by a specific set of religious beliefs or practices." *Shigley*, 2024 WL 1156613, at *5. Here, Niederberger has met this low bar, and accordingly the Court cannot dismiss his failure to accommodate claims on this basis.

---

³ Niederberger attaches to his Response "an Affidavit that cites to and espouses recent statements of Pope Francis on this issue." (ECF No. 21.) This document is not an affidavit but rather an article from "CAPP-USA" which appears to be a Catholic organization. (*See generally* ECF No. 21-1.) Regardless, Niederberger cannot amend his Complaint via his briefing, and the Court does not consider this document in reaching its conclusion.

7

## A. Reasonable Accommodation

Wegmans make several sound arguments regarding the unreasonableness of Niederberger's requested accommodation and the hardship it would pose. However, the Court must deny Wegmans' Motion to Dismiss at this juncture, because these are issues of fact more appropriately resolved on summary judgment. *See Dean v. Acts Ret. Life Communities*, Civ. No. GLR-23-1221, 2024 WL 964218, at *6 (D. Md. Mar. 6, 2024) ("Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment . . . . [Defendant] does not identify, and the Court could not locate, a single case where a federal court decided whether an accommodation imposed an undue hardship on a motion to dismiss." (citations omitted)).[4] Thus, Wegmans' Motion to Dismiss will be denied as to Counts 2 and 7.

However, while the Court will deny the Motion with respect to these claims and does not prejudge the outcome of any future motions, the Court notes that this case echoes a case wherein the Fourth Circuit found that a supervisor's "conduct is not the type that an employer can possibly accommodate[.]" *Chalmers* 101 F.3d at 1021. In that case, the court concluded that an employer was not required to permit its employee to send letters to her co-workers accusing them of immoral conduct, even assuming that sending such letters was required by the employee's religion. *Id.* The Fourth Circuit explained:

> In a case like the one at hand . . . where an employee contends that she has a religious need to impose personally and directly on fellow employees, invading their privacy and criticizing their personal lives, the employer is placed between a rock and a hard place. If [the defendant company] had the power to authorize [the plaintiff employee] to write such letters, and if [the defendant] had granted [her] request to write the letters, the company would subject itself to possible suits from [the plaintiff's co-workers] claiming that [her] conduct violated their religious freedoms or constituted religious harassment. [The plaintiff's] supervisory position

---

[4] None of the cases to which Wegmans cites in support of its argument that Niederberger's requested accommodation is unreasonable or would impose an undue hardship were decided at this procedural posture. *See, e.g., Chalmers*, 101 F.3d 1012 (affirming the grant of a motion for summary judgment where the court concluded that plaintiff had failed to establish a prima facie case and because the "conduct is not the type that an employer can possibly accommodate"); *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 318–19 (4th Cir. 2008) (affirming the grant of summary judgment where the court concluded that the accommodation sought was not reasonable).

8

at the Richmond office heightens the possibility that [the defendant company] (through [the plaintiff]) would appear to be imposing religious beliefs on employees.

*Id.*

### 2. Disparate Treatment (Counts 1 and 6)

Niederberger also brings Title VII and FEPA disparate treatment claims. These claims overlap with the failure to accommodate claims discussed above. For instance, his description of his Title VII disparate treatment claim (Count 1) includes significant discussion regarding Wegmans' failure to accommodate him. (*See* Compl. ¶¶ 54–57.) Further, in his Response, Niederberger states that "[t]he right of religious accommodation . . . has been folded into the right against religious discrimination (disparate treatment)." (ECF No. 21 at 1–2.) It is therefore not clear why Niederberger brought both disparate treatment claims and failure to accommodate claims, and the Court will dismiss the disparate treatment claims as duplicative of his failure to accommodate claims.

Further, to the extent that Niederberger sought to state a claim for disparate treatment based on the alleged favorable treatment of other employees, his Complaint falls short. To state a claim for disparate treatment, a plaintiff must allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

Niederberger alleges that "at least one other of Plaintiff' [sic] co-workers consistently refers to" SF with she/her pronouns, and "has not been subjected to any form of discipline and/or adverse employment action." (Compl. ¶ 43.) He alleges that "[t]his co-worker who [sic] does not have a conscientious religious objection as a reason for doing so." (*Id.*) He also alleges that Wegmans

"treated employees more favorably, by not requiring them to use" appropriate pronouns when referring to SF. (*Id.* ¶ 67.) This is insufficient to state a claim for disparate treatment. Niederberger does not allege that any of these other co-workers were similarly situated to him, as he does not allege they were in supervisory roles, let alone that they supervised SF. Niederberger also does not allege that Wegmans was aware of any such misgendering such that Wegmans could have imposed some discipline. This claim thus fails.

### B. Retaliation (Counts 3 and 8)

Niederberger also brings retaliation claims under Title VII and FEPA. Niederberger alleges that he "engaged in a protected activity by requesting a religious accommodation not to have his speech compelled by Defendant in being forced to use a new, different and assumed name and biologically-incorrect pronouns to a co-worker." (Compl. ¶ 84.) He alleges that after Wegmans denied his religious accommodation, it subjected him to adverse employment action "in retaliation for seeking a religious accommodation." (*Id.* ¶ 86–88.) Wegmans argues that Niederberger's retaliation claims must be dismissed, and Niederberger fails to address this claim in his Response.

Niederberger's retaliation claims must be dismissed. Whether requesting a religious accommodation is protected activity is an unsettled question. *See Parker v. Children's Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *21–22 (D. Md. Dec. 9, 2021) ("It is unclear whether a request for accommodation constitutes protected activity under Title VII. Some case law, including in this District, indicates that requests for accommodation are *not* protected activity . . . . Conversely, other cases have said that requests for accommodation *are* protected activity, typically in the context of requests for religious accommodation." (collecting cases).) However, setting that question aside and assuming for purposes of this Memorandum and Order that it is protected activity, Niederberger alleges that he was retaliated against when Wegmans

10

failed to accommodate him. In other words, Niederberger alleges no "retaliation" other than the failure to accommodate. This improperly collapses Niederberger's failure to accommodate claim into his retaliation claim.

Therefore, the Court finds that Niederberger's retaliation claims brought pursuant to Title VII and FEMA must be dismissed.

### C. Religious Coercion/Harassment (Count 4)

The Court will dismiss Niederberger's Title VII "religious coercion/harassment" claim. Wegmans argues that this claim must be dismissed as duplicative, and, as with several other claims, Niederberger does not address this claim in his Response.

In his Complaint, in support of this claim, Niederberger essentially reiterates other claims, alleging that he was subjected to adverse employment actions when he refused to use SF's correct gender pronouns and name. (*See* Compl. ¶¶ 93–101.) It is therefore not clear how this claim is different from the other claims Niederberger asserts. Thus, the Court construes the "religious harassment" claim as duplicative of the hostile work environment claim discussed below, and the "religious coercion" claim as duplicative of the failure to accommodate and disparate treatment claims discussed above, *see, e.g., Scott v. Montgomery Cnty. Sch. Bd.*, 963 F. Supp. 2d 544, 558–60 (W.D. Va. 2013) (treating harassment claim and hostile work environment claim as one claim), and will dismiss Count 4 as duplicative of other claims.

### D. Hostile Work Environment (Count 5)

Wegmans argues that Niederberger does not sufficiently allege a hostile work environment claim, and Niederberger does not address this claim in his Response. This claim will be dismissed.

"[T]o establish that h[is] workplace was religiously hostile under Title VII, 'a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [religion]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create

11

an abusive work environment; and (4) which is imputable to the employer.'" *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015)). To assess whether conduct was sufficiently severe or pervasive, courts review the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

There are no allegations of unwelcome conduct that was severe or pervasive, and no allegations of an abusive work environment. There are no allegations of offensive, humiliating, or threatening conduct. Nothing in Niederberger's Complaint creates the inference that he was subjected to a workplace that was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21). Rather, Niederberger alleges that Wegmans created a hostile work environment "by demanding that he address [his] co-worker by a new and assumed name and preferred pronouns . . . or face adverse employment actions." (Compl. ¶ 103.) In short, Niederberger essentially alleges that he was subjected to a hostile work environment by Wegmans' failure to accommodate him. Thus, once again, Niederberger improperly seeks to create several claims when he pleads only one: failure to accommodate. Therefore, the Court will dismiss his hostile work environment claim.

### E. Failure to Prevent Discrimination and Harassment (Count 9)

Finally, Niederberger brings a "failure to prevent discrimination and harassment" claim under FEPA. Wegmans argues that this claim must be dismissed, and Niederberger does not address this claim in his Response. It is not clear that such a claim is cognizable, and it is—again—

12

not clear how this claim is different from those discussed above. Niederberger alleges that "Defendants [sic] failed to take immediate and appropriate corrective action to end the discrimination and harassment. Defendants [sic] also failed to take all reasonable steps necessary to prevent the harassment and discrimination from occurring." (Compl. ¶ 149.) It appears that Niederberger asserts that Wegmans not only discriminated against him, but also failed to prevent that discrimination. This is illogical, and the Court will dismiss this claim.

### IV. Conclusion

For the forgoing reasons, the Court will grant in part and deny in part the Motion to Dismiss. The Motion is granted insofar as it seeks the dismissal of Counts 1, 3, 4, 5, 6, 8, and 9. It is denied insofar as it seeks the dismissal of Counts 2 and 7. Therefore, the only counts that survive are Niederberger's Title VII and FEPA failure to accommodate claims.

DATED this 5 day of June, 2024.

BY THE COURT:

_____
James K. Bredar
United States District Judge